IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHRISTOPHER LAUREN GRAHAM**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-5037-L** |
| | § | |
| **HOWARD TYGRETT,** | § | |
| Individually and in his Official Capacity, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff's Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction, filed December 9, 2012. Plaintiff requests that the court consider his Application for Temporary Restraining Order on an *ex parte* basis. After considering the motion, record, and applicable law, the court **denies without prejudice** Plaintiff's Application for Temporary Restraining Order. The court will rule on Plaintiff's Application for Preliminary Injunction and Permanent Injunction after service has been effected on Defendant and he has had an opportunity to file an answer in the action and a response to Plaintiff's motion.

**I.      Background**

Plaintiff Christopher Lauren Graham ("Plaintiff" or "Graham") commenced this action on December 9, 2012, against Howard Tygrett ("Tygrett" or "Defendant"), asserting a section 1983 claim and seeking injunctive relief in the form of an *ex parte* temporary restraining order ("TRO"), preliminary injunction, and permanent injunction.

In his verified Original Complaint ("Complaint"), Graham alleges as follows:

4. On or around August 2011, I submitted an application to receive felony court appointments in Kaufman [C]ounty. Around September 2011, I was approved to receive third degree felony court appointments; I began receiving court appointed cases around this same time.

5. On or around March 9, 2012, I submitted an application personally to Judge Howard Tygrett and Judge B. Michael Chitty requesting placement on the first degree felony criminal appointment list. The renewed application showed that I had met all of the objective requirements for addition to the first degree felony appointment list.

6. A week later, I made contact with Judge Tygrett and Judge Chitty to determine the status of the application to receive first degree felony court appointments. Tygrett told me that the application had to be submitted to Kim Kozelski, head of the indigent defense department in Kaufman [C]ounty, who would then forward the application to him and Judge Chitty for review. The application to be added to the court appointment list was faxed to Kozelski shortly thereafter.

7. I followed up on the application status again and spoke to Chitty and Tygrett to ascertain whether my application had been approved. Respondents indicated that additional requirements beyond those stated in the district court plan would be necessary before approving the application. Specifically, Judge Chitty and Judge Tygrett stated that I had to conduct trials in their courts first; even though having trials before Judges Chitty and Tygrett is not one of the objective requirements to being added to the first degree felony appointment lists in Kaufman County.

8. On or around April 24, 2012, I received a letter from the indigent defense department indicating that my application to receive first degree felony appointments had been denied. Not only was my request for inclusion in the first degree felony application list denied, but I was also demoted from the third degree felony appointment list to the misdemeanor appointment list.

9. Judge Tygrett refused to conduct a hearing[;] he indicated no reason for the demotion to the misdemeanor list[,] nor did he indicate reasons for my application's denial.

10. During the period of being included on the third degree felony court appointment list, I never received any complaints or any notices of defective performance when it came to handling court appointed criminal cases.

11. Before insisting on being placed on the first degree felony list, I customarily received 3-7 appointed felony cases on a monthly basis. Now subsequent to my request to be elevated on the court appointment list, appointments have ceased. Respondents are not using a random system to make appointments as required by the Texas Code of Criminal procedure. Judges Tygrett and Chitty are determining who gets elevated and the number of court appointments received in a racist and discriminatory fashion.

12. Prior to the filing of this suit, I was in the office of Annette Larsen, the new coordinator for indigent defense and general administrative functionary for Judge Tygrett. During the course of conversation, she indicated that I was being removed from all court appointment lists by Judge Tygrett. No explanation for the removal was provided, no information about the accusations was provided, nor was I notified about the removal. I happened to find out about the removal adventitiously. Essentially Tygrett removed me from the wheel because he thought he could do so with impunity.

13. Judge Tygrett has and does continue to operate the court appointment lists in a racist fashion and I am being discriminated against as the only black attorney in Kaufman who was on the court appointment list. I have handled numerous felony cases in Kaufman [C]ounty and I have yet to see another black attorney on the court appointment list.

Pl.'s Compl. 2-4.

Graham contends that when Tygrett denied his application to receive first degree felony court appointments and removed him from the appointment list, Tygrett was acting as a state judge employed by Kaufman County and under the color of state law. Graham asserts that Tygrett's actions deprived him of a "property right of being included in the first degree felony appointment list" and "has been deprived of a property when [he] was removed from the third degree felony appointment list due to the arbitrary and discriminatory actions of Judge Tygrett without due process." *Id.* 4. In addition, although not Kaufman County is not a party to this action, Graham contends that it is also liable because the actions of Tygrett "constitute the policy of Kaufman County to violate individual constitutional rights." *Id.*

> With regard to his request for a TRO, Graham states:
>
> Complainant [Graham] has a substantial likelihood of success on the merits; the Temporary Restraining Order is necessary to keep the status quo until this matter can be resolved and to prevent financial loss to complainant; Complainant's injury is irreparable since I am known around the community as a court appointed attorney, being removed would affect my reputation in the local community; the threatened harm to Complainant outweighs the harm it would inflict on the nonmovant, since I would simply continue to receive cases and compensation on those cases as I have since the end of 2011; the temporary restraining order serves the public interest since it shows that one's constitutional rights cannot be subverted in the administration of the district court appointment system.
>
> I am requesting that the temporary restraining order be issued ex parte because if this ruling goes into effect, then complainant will suffer immediate financial and reputational loss, since I will no longer be receiving cases from Kaufman county. On 12/5/2012 I requested a fax number of Complainant [sic] so that I may send notice of hearing, and was told that Tygrett had no fax number, and by the time that this Complaint is delivered to the defendant via mail this Temporary Restraining Order will have already been heard.

Graham requests the court to enter an *ex parte* TRO but does not state in his Application what specific relief he is seeking to obtain as a result of the TRO.

## II.     Standard for Preliminary Injunction and Temporary Restraining Order

There are four prerequisites for a preliminary injunction or temporary restraining order. A court may grant such relief only when the movant establishes that:

> (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury [to the movant] outweighs the threatened harm to the defendant; and (4) the granting of the preliminary injunction will not disserve the public interest.

*Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Auth. of the State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (en banc). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas*

**Memorandum Opinion and Order - Page 4**

*Pipeline*, 760 F.2d 618, 621 (5th Cir. 1985); Clark, 812 F.2d at 993. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co.,*, 760 F.2d at 621.

A TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.). The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[ ] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

Under Rule 65(b)(1) of the Federal Rules of Civil Procedure, the court may issue a TRO without notice to the adverse party or its attorney, but only if both of the following requirements are met:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(A)-(B). Thus, a TRO cannot be issued *ex parte* absent a clear showing that immediate and irreparable injury will result before the adverse party can be heard. *Id.*

### III.   Analysis

Even accepting as true the factual allegations in the Complaint, the court determines that Graham has failed to meet his burden of establishing by a clear showing that he will suffer immediate and irreparable injury before Tygrett can be heard. According to Graham, the denial of his application to receive first degree felony appointments and his demotion from the third degree

**Memorandum Opinion and Order - Page 5**

felony appointment list to the misdemeanor appointment list occurred several months ago on April 24, 2012.  The court therefore fails to understand the urgency of Plaintiff's *ex parte* TRO.

Moreover, the conclusory nature of Graham's other allegations is insufficient to support the relief sought. Graham refers generally to the Texas Code of Criminal Procedure and local rules applicable to the assignment of attorneys to criminal defendants without identifying the specific rules or statutes implicated that are necessary for the court to rule on his motion.  Likewise, Graham states in conclusory fashion that being included in a felony appointment list for indigent criminal defendants constitutes a "property right," but he cites no legal authority, and the court in a quick search was unable to locate any that has addressed this issue and determined that inclusion on a felony appointment list is a property right rather than a privilege.  He also provides no factual detail as to why he believes he is "being discriminated against as the only black attorney in Kaufman [C]ounty who was on the court appointment list." Pl.'s Compl. 4.  Accordingly, the court determines that Graham has failed to satisfy the first and second requirements for a TRO and is therefore not entitled to the relief sought based on the record before the court.  Because Graham has failed to carry his burden of establishing a likelihood of success on the merits and clearly showing that he will suffer immediate and irreparable harm before Defendant can be heard in opposition, the court need not address at this time the other requirements for obtaining a TRO.

**IV.    Conclusion**

For the reasons herein explained, the facts alleged by Graham regarding immediate and irreparable injury and the conclusory nature of his other allegations are insufficient to support the *ex parte* injunctive relief sought.  Accordingly, the court **denies without prejudice** Plaintiff's Application for Temporary Restraining Order. The court will rule on Plaintiff's Application for

Preliminary Injunction and Permanent Injunction after service has been effected on Defendant and he has had an opportunity to file an answer in the action and a response to Plaintiff's motion. After briefing on Plaintiff's Application for Preliminary Injunction is complete, the court will notify the parties whether a hearing is necessary to assist the court's resolution of the matter.

**It is so ordered** this 11th day of December, 2012.

_____
Sam A. Lindsay
United States District Judge